**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **JOHNNY CRAWFORD, JR.** | § | |
| **TDCJ-CID #491148** | § | |
| | § | |
| **VS.** | § | **C.A. NO. C-04-335** |
| | § | |
| **DOUGLAS DRETKE, ET AL.** | § | |

**MEMORANDUM AND RECOMMENDATION
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this civil rights action, plaintiff Johnny Crawford, Jr.complains that certain McConnell Unit correctional officers routinely beat and threatened to kill him between 1992 and 2004, and that the certain prison officials knew of the conditions to which he was exposed, but failed to intervene or to otherwise protect him. (See D.E. 1, 2, 21, 81). Defendants Dretke, Dugan, Bailey, Garza, and Quintero have filed a motion for summary judgment to dismiss plaintiff's claims on the grounds of: (1) failure to exhaust administrative remedies; (2) inadequate grievance; (3) limitations; and (4) Eleventh Amendment and qualified immunity. (D.E. 85). Plaintiff has filed a response in opposition. (D.E. 96). For the reasons stated herein, it is respectfully recommended that defendants' motion for summary judgment be denied in all respects save and except plaintiff's claims  for monetary damages against defendants in their official capacities, which are barred by the Eleventh Amendment.

## I.  JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.  BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is in the custody of the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and at all times relevant to the facts of this lawsuit was incarcerated at the McConnell Unit in Beeville, Texas.    Plaintiff filed this civil rights action on June 28, 2004,

complaining that, while he was at the McConnell Unit, from March 1992 until his transfer to the Michael Unit in January 2004, he was subjected to multiple instances of excessive force by known and unknown defendants, and that certain prison officials knew of the excessive force, but did nothing to stop it.   (D.E. 1, 2).  A Spears[1] hearing was held on October 14, 2004.  (D.E. 15). Following the evidentiary hearing, it was recommended that plaintiff's excessive force claims against McConnell Unit officers Thomas Dugan, Regino Quintero, Michael Bailey, Edward Weir and Pablo Garza be retained, as well as his failure to protect claims against Doug Dretke and Sergeant Martinez.   (D.E. 16).  On January 3, 2005, plaintiff filed an amended complaint (D.E. 21), and on September 1, 2006, plaintiff filed his second amended complaint.  (D.E. 81).  On October 13, 2006, defendants Dretke, Dugan, Baily, Garza and Quintero filed the instant motion for summary judgment.  (D.E. 85).  On November 30, 2006, plaintiff filed his summary judgment response.  (D.E. 96).  On January 5, 2007, and January 8, 2007, the Office of the Attorney General, as *amicus curiae*, filed a motion to dismiss defendants Weir and Martinez because these defendants have not been served.  (See D.E. 104, 105).

### III.  SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motion for summary judgement, defendants offer the following:

Ex. A:  Copy of plaintiff's Step 1 Grievance, No. 2004139901, dated April 2, 2004, complaining of events at McConnell Unit from 1993-2004;

Ex. B.  Business Record Affidavit of Gwen Kay Stanford, TDCJ Assistant Administrator of Offender Grievances, testifying that there is no corresponding Step 2 grievance for Grievance No. 2004139901;

Ex. C:  Business Record Affidavit of Gwen Stanford testifying as to plaintiff's grievance filing history; and

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

Ex. D:  Step 1 Grievance dated February 19, 2003, Grievance No. 2003114352, complaining about officers P. Fonseca, J. Deleon, and medical care at the McConnell Unit, and Step 2 Grievance regarding the same.

(See D.E. 59, attached exhibits).[2]

Plaintiff offers the following summary judgment evidence:

Ex. 1:  Declaration of plaintiff, Johnny Crawford, Jr.;

Ex. 2:  Plaintiff's correspondence to Internal Affairs dated February 22, 2000;

Ex. 3:  Administrative Segregation Decisions retaining plaintiff in ad. seg.

Ex. 4:  Copy of plaintiff's first amended complaint, filed January 3, 2005;

Ex. 5:  Copy of plaintiff's memorandum in support of his original complaint, filed June 28, 2004;

Ex. 6:  Copy of plaintiff's original complaint, filed June 28, 2004;

Ex. 7:  Copy of plaintiff's motion for summary judgment, filed February 23, 2005;

Ex. 8:  Inmate request dated November 9, 1994, in which plaintiff requests a legal visit with another inmate; request denied;

Ex. 9:  Inmate request dated January 7, 2000, in which plaintiff requests a legal visit with another inmate due to injury to his right hand; request denied;

Ex.10:  Indigent supply postage request dated February 14, 2000; request denied;

Ex.11:  Inmate request dated March 12, 2000, asking for paper, carbon paper, envelopes, and a pen; request denied;

Ex.12:  Inmate request dated April 9, 2000, in which plaintiff asks for supplies; request denied;

Ex.13:  Affidavit of plaintiff's counsel, Christopher J. Gale, verifying exhibits.

---

[2] Defendants' exhibits are filed with their first motion for summary judgment, (D.E. 59), that was denied without prejudice.  Reference to defendants exhibits are to "DX" followed by the appropriate letter and page number. Reference to plaintiff's exhibits are to "PX" followed by the appropriate number and page.

(See D.E. 96, attached exhibits).

For purposes of this motion, the following facts are not in dispute:

In March 1992, plaintiff was returned to the TDCJ after an alleged escape attempt.[3]  (PX-1, Crawford Aff't at ¶ 2).  Plaintiff was taken to the McConnell Unit and housed in administrative segregation.  Id.

On March 5, 1993, plaintiff returned, handcuffed, from the showers, to find that his cell had been "tossed" by Officer Dugan.[4]  (PX-1, Crawford Aff't at ¶ 2).  Plaintiff asked Officer Dugan why he had destroyed his personal property.  Id.  In response, Officer Dugan grabbed plaintiff, shoved him up against the wall and told him to "shut the f*** up."  Officer Dugan shoved plaintiff down the stairs.[5] Id.  Officer Quintero arrived and slammed plaintiff onto the ground.  Id.  Plaintiff told Sergeant Martinez that he wanted to file a grievance against Officer Dugan and Officer Quintero, but Sergeant Martinez refused to let him file a grievance.  Id.  Instead, Sergeant Martinez allowed Officer Dugan to continue to supervise plaintiff.  Id.  Plaintiff told Officer Dugan that he wanted to file a grievance against him.  Id.  In response, Officer Dugan beat plaintiff, throwing him to the floor and kicking him in the head repeatedly.[6] Id.

_____

[3] Plaintiff was not charged with attempted escape until 1993, and he was not served with an indictment until November 2000.  (PX-1, Crawford Aff't at ¶ 2).  The indictment was later dismissed on July 20, 2001.  Id.

[4] In his original complaint, plaintiff reported that his personal property had been smashed, soaked from being sprayed down with a fire extinguisher and thrown out of his cell.

[5] No defendant has submitted an affidavit contesting the facts as set forth by plaintiff.

[6] At the Spears hearing, plaintiff testified that, following this beating, he experienced bleeding out of his ear, nose and mouth.  (See D.E.16 at 4).  He was taken to medical a few days after the incident and was given antibiotics and ear drops.  Id.  Plaintiff was eventually taken to the hospital in Galveston where the doctor informed him that he had a hole in his ear and that surgery would be necessary.  Id. Plaintiff eventually had two surgeries on his ear and alleges that he suffered permanent injuries.  Id.

4

On August 11, 1995, Officer Weir asked plaintiff to throw some urine or water on him so that he could go home early.  (PX-1, Crawford Aff't at ¶ 2).  Plaintiff refused.  Id.  Plaintiff was later charged with throwing urine on Officer Weir.  Id.  Plaintiff attempted to file a grievance regarding the false charge; however, Officer Weir and Officer Quintero came to plaintiff's cell with the grievance and tore it up.  Id.

In 1996, plaintiff was admitted to the hospital for surgery on his ear and a brow lift due to the injuries he suffered from Officer Dugan's March 1993 beating.  (PX-1, Crawford Aff't at ¶ 2).  Following the surgery, plaintiff  was attacked and beaten while asleep in his bed recuperating.  Id.  Plaintiff attempted to file a grievance, but was prevented from doing so.  Id.

On May 7, 1997, Officers Dugan, Garza and Quintero came to plaintiff's cell with a grievance plaintiff had filed.  (PX-1, Crawford Aff't at ¶ 2).  The officers tore up the grievance, beat plaintiff, then dragged him out of his cell.  Id.  They forced plaintiff's head into a toilet and flushed it repeatedly until plaintiff lost consciousness.  Id.

On October 12, 1998, Officers Bailey and Dugan escorted plaintiff from the dayroom back to his cell.  (PX-1, Crawford Aff't at ¶ 2).  The officers showed plaintiff a grievance he had submitted and then tore it up.  Id.  They then threw him to the floor, hit him, and then threw him back into his cell.  Id.  They told plaintiff to stop filing grievances or they would "f*** him off."[7]  Id.  On other occasions, Officers Bailey and Dugan approached other inmates about killing plaintiff.  Id.

On February 22, 2000, plaintiff sent a letter to Internal Affairs complaining of past assaults and threats on his life by Officers Dugan and Bailey.  (PX-2).

---

[7] Plaintiff states that this is the phrase defendants use for killing someone.

5

In January 2004, plaintiff was transferred to the Michael Unit.  (PX-1, Crawford Aff't at ¶ 2).  On April 2, 2004, plaintiff filed a Step 1 grievance, Grievance No. 2004139901, complaining of the events that occurred at the McConnell Unit.  (Id.; DX-A at 1-2).  On April 7, 2004, his grievance was denied because the grievable time period had expired.   (DX-A at 2).

## IV.  DISCUSSION

### A.     Official capacity claims and injunctive relief.

Plaintiff has sued defendants in their official and individual capacities.  See D.E. 1.  He seeks monetary damages and   prospective injunctive relief   "requiring the State to conform to the requirements of the federal Constitution and statutes as they pertain to the protection of persons entrusted to their care and bring said policies into compliance with the commands of same." (Plaintiff's Second Amended Complaint, D.E. 81 at 9).

A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  The Eleventh Amendment bars a suit for money damages against a state or state agency.  Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).  A judgment may not be entered against a state officer in his official capacity for violating federal law in the past.  Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

To the extent plaintiff is suing defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment.  As such, defendants are entitled to summary judgment in their favor on those claims, and it is respectfully recommended that those claims be dismissed with prejudice.  Plaintiff's claims for prospective injunctive relief are not barred.

**B.      Exhaustion.**

Defendants move  to dismiss plaintiff's claims for failure to exhaust administrative remedies, arguing that plaintiff failed to properly exhaust his administrative remedies because: (1) he failed to file a Step 2 grievance complaining about the incidents that form the basis of this lawsuit, and (2) the Step 1 grievance he did file is inadequate as it fails to identify by name the specific defendants and it is untimely.

Section 1997e(a) of Title 42 provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Known as the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), § 1997e(a) applies to *all* inmate suits about prison life, whether involving general circumstances or specific incidents. Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330-31 (5th Cir. 2002).  Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process.  Booth v. Churner, 532 U.S. 731, 734 (2001);  Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).  Administrative remedies are to be exhausted before the filing of a § 1983 suit, rather than while the action is pending.  Wendell v. Asher 162 F.3d 887, 890 (5th Cir. 1998).

The Supreme Court recently examined the PLRA's exhaustion requirement and found that a prisoner must exhaust all steps in the state administrative grievance process, and do so properly, before filing suit in federal court.  Woodford v. Ngo, ___U.S. ___, 126 S. Ct. 2378, 2385 (2006).  The Supreme Court stated:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims.   Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)...." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

Woodford, 126 S. Ct. at 2385.

The Texas Department of Criminal Justice ("TDCJ") currently provides a two-step procedure for presenting administrative grievances.  Step 1 requires the prisoner to submit an administrative grievance at the institutional level.  Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (citing to TDCJ Admin. Directive No. AD-03.82 (rev. 1), Policy ¶ IV (Jan. 31, 1997)).  After an investigation, the unit grievance investigator prepares a report and makes a recommendation to the final decision maker, which may be the warden, assistant warden, facility administrator, assistant facility administrator, or health administrator.  Wendell, 162 F.3d at 891.  Step 2 permits the prisoner to submit an appeal to the division grievance investigator with the Institutional Division of the TDCJ. Id.  After an investigation, the departmental grievance investigator prepares a report and makes a recommendation to the final decision maker for Step 2 of the process, which is the director, deputy director, regional director or assistant director.  Id.

The grievance procedure takes approximately 90 days to exhaust.  Id.  Prisoners are allowed fifteen calender days to file a Step 1 grievance.  Id. (citing TDCJ Admin. Directive No. AD-3.82 (rev. 1), Policy ¶ VI (Jan. 31, 1997)).   The response to the Step 1 grievance is due within forty days after receipt of the grievance.  Id.  The prisoner then has 10 days to submit an appeal.  Id.   The response to the Step 2 grievance is due within forty days after receipt of the prisoner's appeal.  Id.

The TDCJ Inmate Grievance System provides that, if an inmate does not receive a written decision by the 180th day after the grievance is filed, he may proceed with his other state or federal court remedies.  Tex. Gov't Code § 501.008(d)(2) (Vernon 1998).

In support of their motion to dismiss, defendants offer the Affidavit of Gwen Stanford, TDCJ Assistant Administrator of Offender Grievances, who states that she has reviewed plaintiff's grievances records and, in regards to Grievance No. 2004139901 in which plaintiff complains about the incidents that allegedly occurred at the McConnell Unit between March 1992 and January 2004, there is no corresponding Step 2 grievance.  (See DX-B).  Plaintiff admits that he filed only a Step 1 grievance complaining about the events that form the basis of this lawsuit.  He claims that he did not file a Step 2 grievance because his Step 1 grievance was returned to him as untimely and inappropriate, such that there was no response or reasoned decision to appeal.  (D.E. 96 at 14).

The primary purpose of the exhaustion requirement is to eliminate unwarranted federal court interference and to afford prison officials with the time and opportunity to address complaints eternally.  Woodford, 126 S. Ct. at 2387-88. See also Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004).  Although the Fifth Circuit has taken a "strict approach" to the exhaustion requirement, it "may be subject to certain defenses such as waiver, estoppel, or equitable tolling."  Days v. Johnson, 322 F.3d 863, 866 (5th Cir. 2003) (quoting Wendell, 162 F.3d at 890.  For example, in Days, the plaintiff slipped and fell in the prison dining hall, breaking his right hand.  Days, 322 F.3d at 864.  Once his hand healed, he filed a Step 1 grievance, but it was rejected as untimely, so he filed suit in federal court.  Days, 322 F.3d at 866.  The district court dismissed his case without prejudice for failure to exhaust.  Id.  Days then filed a second Step 1 grievance that was returned unprocessed as untimely.  Id.  He filed a Step 2 grievance that was returned unprocessed with the following

notation: "You may not submit a Step 2 Appeal on a Step 1 Grievance that was returned to you for improper submission."  Id.

On appeal, Days argued that he had exhausted all of the administrative remedies *available* to him.  Id. at 867.  He claimed that, once his broken hand had healed, he attempted to exhaust his administrative remedies, but his Step 1 grievance was returned unprocessed as untimely.  Id.  In finding that Days had, in fact, exhausted the remedies available to him, the Fifth Circuit explained:

> The facts as alleged by Days indicate that his injury actually prevented him from timely filing a grievance and that his untimely grievance was returned unprocessed.  Under these circumstances, we conclude that Days sufficiently alleged that, prior to filing the instant § 1983 suit, he exhausted the administrative remedies that were personally available to him.

Days, 322 F.3d at 867.

In this case, plaintiff has submitted his uncontroverted statement that the administrative process was not available to him when he attempted to file grievances about the defendants' conduct.  It was not until he was transferred off the McConnell Unit that he was able to file a Step 1 grievance, which he did in fact file.  (See DX-A).  After it was returned unprocessed as untimely, he did not file a Step 2 appeal because there was decision to appeal.  Moreover, the Days decision indicates that, pursuant to TDCJ procedure, an inmate is *not permitted* to file a Step 2 grievance where the Step 1 grievance was returned unprocessed as untimely.  Days, 322 F.3d at 866.  That is, had plaintiff filed a Step 2 grievance, it would have been rejected.  The ministerial act of filing an untimely grievance does not further any purpose of the exhaustion goal of notice.  See Thomas v. Woolum, 337 F.3d 720, 744 n. 2 (6th Cir. 2003) (referencing Days decision and noting that administrative remedies are deemed unavailable when (1) an inmate's untimely filing of a grievance is because of a physical injury and (2) the grievance system rejects the inmate's subsequent attempt

10

to exhaust his remedies based on the untimely filing of the grievance). <u>And</u> <u>see</u> <u>Palomino v. Stanton</u> 1997 WL 350099 (N.D. Cal. Jun. 17, 1999) (unpublished) (noting it would be inefficient to dismiss case and have plaintiff refile after exhaustion).

In this case, plaintiff has submitted uncontroverted evidence that, while at the McConnell Unit, numerous grievances that he attempted to file were destroyed by defendants and not processed. (<u>See</u> PX-1, Crawford Aff't at ¶ 2). Defendants attempt to refute plaintiff's testimony by noting that during 2003, plaintiff was able to file three grievances. (<u>See</u> DX-C, Stanford Aff't at ¶ 4). However, the mere fact that three grievances were actually processed and not destroyed in 2003 does not refute plaintiff's testimony that the majority of his grievances were intercepted and destroyed. In fact, Ms. Stanford's affidavit stating that *no* grievances were filed by plaintiff for the years 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, and 2002 supports plaintiff's claims that his grievances were intercepted and destroyed.

The Fifth Circuit has found administrative remedies to be unavailable when prison authorities refuse or fail to give an inmate the appropriate grievance forms despite his requests. <u>Aceves v. Swanson</u>, 75 F. Appx. 295, 296 (5th Cir. 2003). The Third Circuit has concluded that dismissal or summary judgment for failure to exhaust under § 1997e(a) is inappropriate when prison officials have mislead or otherwise precluded the inmate from filing or exhausting prison grievance procedures. <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003) (denying motion to dismiss for failure to exhaust where prison officials refused to provide inmate with necessary grievance forms, and as such, finding that the inmate lacked "available" administrative remedies). Other circuits have likewise found that the misconduct of prison officials with regard to an inmate's grievances precludes a defendant from raising failure to exhaust as an affirmative defense. In <u>Ziemba v. Wezner</u>, 366 F.3d 161, 163 (2d Cir. 2004), the Second Circuit concluded that the affirmative defense

of exhaustion is subject to estoppel if prison officials preclude the inmate from exhausting administrative remedies.  Similarly, the Sixth Circuit held that when an inmate did not receive a response to his prison grievances, defendant's motion to dismiss based on failure to exhaust administrative remedies must be denied.  Boyd v. Corrections Corp. of America, 380 F.3d 989, 996-97 (6th Cir. 2004).  And in  Rodriguiz v. Westchester County Jail Correctional Dep't, 372 F.3d 485 (2d Cir. 2004), the Second Circuit excused exhaustion finding a prisoner's incorrect understanding of the exhaustion rules based on since-overturned Second Circuit precedent to be reasonable.

Under the precedent cited above, an administrative remedy is *not* available under 1997e if prison officials prevent a prisoner from utilizing it.  Moreover, due to the very nature of the incidents complained of, excessive force by correctional officers resulting in subsequent hospitalizations of plaintiff,  there is no doubt that the necessary McConnell Unit officials were "on notice" of the incidents complained of, such that the primary purpose of the exhaustion requirement, to alert prison officials of the complaint, is not at issue in this case.

Defendants argue that plaintiff's Step 1 grievance was inadequate because it failed to sufficiently identify the defendants and the incidents complained of.   However, plaintiff's claims are unusual as they span over ten years, and it was allegedly defendants' actions that prevented him from raising his claims in grievances.  The Courts have recognized that continuing violations present unique circumstances concerning statute of limitations and exhaustion.  See e.g. Woodford v. Ngo, 126 S. Ct. 2378 (2006).  The Fifth Circuit has explained that, in deciding how much detail is required in a given case, a reviewing court "must interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials 'time and opportunity to address complaints internally.'"  Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004) (quoting Porter, 534 U.S. at 525). Where, as here, the alleged violation repeats itself and involves the same defendants, plaintiff's

12

generalized statement of the abuses he suffered provides sufficient notice.  Moreover, as noted earlier, TDCJ returned the grievance unprocessed as untimely and not for failure of plaintiff to identify the individuals who allegedly beat him and tore up grievances.  TDCJ officials made no attempt to investigate plaintiff's claims, and to request dismissal for failure to identify individuals and events which officials had no intentions of investigating seems a bit disingenuous.

It is respectfully recommended that defendants' motion for summary judgment to dismiss plaintiff's claims on the basis of failure to exhaust be denied.

**C.    Statute of limitations.**

Defendants argue that, prior to 2001, exhaustion of administrative remedies was not mandated, such that plaintiff could have filed a federal lawsuit without first exhausting his administrative remedies, and that his failure to do so renders his claims untimely.

Federal civil rights actions instituted in Texas, such as those brought pursuant to 42 U.S.C. § 1983, are deemed analogous to personal injury claims, and, therefore, the applicable limitations period is the two years fixed by TEX. CIV. PRAC. & REM. CODE § 16.003(a).  Accrual of a § 1983 claim is governed by federal law.  A cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.  Gonzales v. Wyatt, 157 F.3d 1016, 1020 (5th Cir.1998).  Time during which administrative remedies are pursued tolls the limitation period. Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

Plaintiff has offered uncontroverted evidence demonstrating that he was routinely denied legal visits and indigent legal supplies.  (See PX-8 through PX-12).  Incredulously, plaintiff's requests for indigent supplies were rejected because he "had not mailed anything" in the past.  (See PX-10, PX-11, PX-12).  He was denied legal visits even when his hand was broken and he only requested that another inmate assist him with writing.  (PX-9).  It is also apparent that, because

plaintiff could not file a grievance without it being destroyed, there would be little chance of his filing a lawsuit without it meeting a similar fate.  Because the uncontested evidence establishes a systematic pattern of plaintiff's grievances being destroyed, and his requests for legal visits and indigent supplies being denied, it is recommended that limitations be tolled until plaintiff was transferred to the Michael Unit and could safely assert his claims.  Thus, it is respectfully recommended that defendants' motion to dismiss based on limitations be denied.

**D.     Qualified Immunity.**

Defendants move for summary judgment on the grounds of qualified immunity.

The qualified immunity determination involves a two-step analysis: first, "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'"  Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)).  If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established – that is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Id. at 624 (quoting Price, 256 F.3d at 369).  Once defendants have invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the defense is inapplicable.  McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

The threshold question in a qualified immunity analysis is whether a constitutional right would have been violated on the facts alleged.  Saucier v. Katz, 533 U.S. 194, 200 (2001).

**1.     Excessive force.**

To state a claim for excessive force, plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to

14

cause harm, and that the injury he suffered was more than *de minimis,* but not necessarily significant. See Hudson v. McMillian, 503 U.S. 1, 6, 10 (1992); Gomez v. Chandler, 163 F.3d 921, 923-24 (5th Cir. 1999); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997).  The factors to be considered are (1) the extent of the injury suffered; (2)  the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5)  any effort made to temper the severity of a forceful response.  Gomez, 163 F.3d at 923.

### Step 1: Constitutional violation.

Assuming the facts in the light most favorable to plaintiff, plaintiff has demonstrated that there is a genuine issue of material fact as to whether on March 5, 1993, Officer Dugan and Officer Quintero used excessive force against him when he returned from the showers and inquired about the shake down of his cell and destruction of his personal property.  Plaintiff states that he was handcuffed with his hands behind his back, and that Officer Dugan pushed him down the stairs, and then both officers slammed him to the floor.  (PX-1, Crawford Aff't at ¶ 2).  Defendants have failed to offer any evidence disputing the facts as alleged by plaintiff, but instead argue that any injury he might have suffered is *de minimis,* such that plaintiff has failed to state a constitutional violation. However, plaintiff testified that the repeated beatings caused nerve damage to his left arm, and further injured his lower back, left eye, and face.  (PX-1, Crawford Aff't at ¶ 2).  He also claims that he was hospitalized in 1996 due to Officer Dugan's prior beatings, and that surgery was necessary. Id.  Defendants have failed to offer plaintiff's medical records or the affidavit of a qualified health care provider opining that the injuries plaintiff suffered were only *de minimis*.  Thus, a fact issue exists concerning the extent of plaintiff's injuries from the March 5, 1993 incident.

Similarly, plaintiff claims that on May 7, 1997, Officers Dugan, Quintero and Garza "turned [him] into their personal punching bag." (PX-1, Crawford Aff't at ¶ 2). He claims that defendants then placed his head in the toilet and flushed it until he lost consciousness. Id. Clearly, the facts alleged by plaintiff, and not refuted by defendants, establish a claim for excessive use of force with accompanying injury.

On October 12, 1998, plaintiff alleges he was assaulted by Officer Dugan and Officer Bailey. He claims that, after they destroyed a grievance, they threw him to the floor and beat him. (PX-1, Crawford Aff't at ¶ 2). Again, defendants are silent as to any justification for the force alleged by plaintiff, such that a genuine issue of material fact exists.

Regardless of when plaintiff first complained of pain or any lasting injuries, plaintiff testified that the defendant officers physically handled him in such a way as to cause pain and bruising, such that the excessive force resulted in "some injury." Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (injury need not be significant). His injuries were significant enough to require surgery. (PX-1, Crawford Aff't at ¶ 2). Plaintiff has stated a claim of excessive force against Officer Dugan, Officer Quintero, Officer Garza, and Officer Bailey.

**Step 2: Objective reasonableness.**

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "The central concept [of the test] is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional

rights.  Hope v. Pelzer, 536 U.S. 730, 740 (2002).  Even officers who interpret the law mistakenly but reasonably are entitled to immunity.  See Anderson, 483 U.S. at 641.

Not a single defendant suggests that any legal principle involved was not clearly established at the time of the use of force.  Thus, whether defendants' actions were objectively reasonable depends on whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 5 (1992).

Assuming the facts in the light most favorable to plaintiff, it cannot be said that defendants' actions were objectively reasonable.  There are genuine issues of material fact regarding the need for an application of force and the relationship between the need and the amount of force used.  Thus, fact issues preclude the entry of summary judgment on defendants' defense of qualified immunity.  Accordingly, it is respectfully recommended that Officers Dugan, Bailey, Garza and Quintero's  motion for summary judgment to dismiss plaintiff's claims of excessive force based on qualified immunity be denied.

       2.       **Failure to protect.**

Plaintiff claims that, during the eleven years he was at the McConnell Unit, Doug Dretke was a Regional Director and his region included the McConnell Unit.  Plaintiff alleges that Mr. Dretke knew he was being assaulted by the correctional officers, yet he ignored that risk and allowed plaintiff to remain in administrative segregation at the McConnell Unit, and not intervene in the situation.

### Step 1: Constitutional violation.

To establish a failure to protect claim under 42 U.S.C. § 1983, a prisoner must show that he has been incarcerated under conditions posing a substantial risk of serious harm and that the defendant prison official was deliberately indifferent to his need for protection. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Neals v. Norwood, 59 F.3d 530, 532 (5th Cir. 1995). To act with deliberate indifference, a defendant prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Only deliberate indifference will suffice to state a failure to protect claim; mere negligence is not sufficient. See id.; see also Oliver v. Collins, 914 F.2d 56, 60 (5th Cir. 1990) (holding that a negligent failure to protect from harm does not make a claim under 42 U.S.C. § 1983).

Defendant Dretke argues that plaintiff is attempting to hold him liable for the acts of his subordinates on a theory of *respondeat superior*, which is not a basis for § 1983 liability. See e.g. Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) (only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983); Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (to state a cause of action under § 1983, a plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged). Mr. Dretke argues that he had no personal involvement in the alleged constitutional violations, such that he is not liable on any of plaintiff's claims.

At the Spears hearing, plaintiff testified that he sent numerous letters to Mr. Dretke attempting to notify him of the situation, but never received a response. (See D.E. 16 at 12). Mr. Dretke has not refuted this assertion. Thus, at this point, a genuine issue of a material fact exists as

to whether or not Mr. Dretke personally knew that plaintiff was exposed to a substantial risk of harm and ignored that risk.  Thus, plaintiff has stated a claim against Doug Dretke.

### Step 2: Objective reasonableness.

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "The central concept [of the test] is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.  Hope v. Pelzer, 536 U.S. 730, 740 (2002).  Even officers who interpret the law mistakenly but reasonably are entitled to immunity.  See Anderson, 483 U.S. at 641.

In the context of an Eight Amendment failure to protect claim, whether defendants' actions were objectively reasonable depends on whether the defendants both knew of the risk and failed to take reasonable measures to alleviate it.  Farmer, 511 U.S. at 847.  "[T]he 'failure to alleviate a significant risk that [the official] should have perceived, but did not, is insufficient to show deliberate indifference.'"  Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752,, 756 (5th Cir. 2001) (quoting Farmer, 511 U.S. at 833).  Further, "negligence is insufficient to support a finding of liability.  Adames v. Perez, 331 F.3d 508, 514 (5th Cir. 2003).  That is, prison officials violate the Eighth Amendment only if they are both aware of a substantial risk to inmate safety *and* fail to respond properly.  Johnson, 385 F.3d at 524.  There is no liability if the official responded reasonably to the risk, even if the harm ultimately was not averted.  Id.

When assessing objective reasonableness, it is necessary to articulate the asserted constitutional right more specifically.  Thompson v. Upshur County, 245 F.3d 447, 460 (5th Cir.

2001).  That is, when the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that "all reasonable officials similarly situated would have known that the alleged acts of the defendants violated the United States Constitution."  Id.

As discussed above, plaintiff has established that there was a risk to his health and safety and he contends that he made the risk known to Mr. Dretke.  If Mr. Dretke were aware of the repeated beatings plaintiff was receiving in administrative segregation on the McConnell Unit and did not intervene, a jury could find that his actions were objectively unreasonable.  As such, a genuine issue of a material fact exists, and defendant Dretke is not entitled to qualified immunity on plaintiff's failure to protect claim.

**E.     Motion to Dismiss.**

The Attorney General moves to dismiss defendants Weir and Martinez from this lawsuit because, despite repeated efforts, these defendants have never been served (D.E. 104, 105).  The Rules require dismissal where defendants are not served within one hundred twenty days. FED. R. CIV. P. 4(m).  Weir was identified, but never served (D.E. 42, 27), and Martinez was never identified.  TDCJ exercised reasonable diligence in attempting to identify and locate these defendants.  It is respectfully recommended that the motion to dismiss be granted, and that plaintiff's claims against Weir and Martinez be dismissed without prejudice.[8]

---

[8] The Attorney General's motion to dismiss was filed on January 5, 2007 (D.E. 4), and resubmitted on January 8, 2007 (D.E. 5), such that plaintiff has not yet had an adequate opportunity to respond.  However, the motion is addressed due to the upcoming January 22, 2007 trial date.  If plaintiff has any authority which would prohibit dismissal, or any new or additional information concerning the whereabouts of defendants Weir and Martinez, he can include that information in his objections to this Memorandum and Recommendation, and the motion to dismiss will be reconsidered.

## V.  <u>RECOMMENDATION</u>

For the following reasons, it is respectfully recommended that plaintiff's claims for monetary damages against defendants in their official capacities be dismissed as barred by the Eleventh Amendment, and that defendants be granted summary judgment in their favor on those claims.  It is recommended further that defendants' motion for summary judgment (D.E. 85) in all other respects be denied, and that this case  proceed to trial.  Finally, it is respectfully recommended that plaintiff's claims against defendants Weir and Martinez be dismissed without prejudice.

Respectfully submitted this 11th day of January, 2007.


B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).